IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**KIMBERLY ARNOLD**                                          Case No. 3:10-cv-01025-AC

                   Plaintiff,                         OPINION AND ORDER ON

    v.                                                  ATTORNEY FEES AND COSTS

**PFIZER, INC.**

                Defendant.

ACOSTA, Magistrate Judge

On June 13, 2014, the jury returned a verdict against Defendant Pfizer, Inc. ("Pfizer") and

in favor of Plaintiff Kimberly Arnold ("Arnold") on her claims of discrimination, failure to provide

reasonable accommodation, and retaliation based on her disability under Title I of the Americans

with Disabilities Act (ADA), 42 U.S. C. § 12101 *et. seq.,* and the Oregon Rehabilitation Act, OR.

REV. STAT. § 659A.100 *et. seq.* Pursuant to the jury's verdict in this case, the court awarded

$1,175,165.00, in damages, plus prejudgment and post-judgment interest as detailed in the judgment

(Dkt. No. 319). Presently before the court is Arnold's Motion for Attorney Fees and Costs (Dkt. No.

1 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

322) and Bill of Costs (Dkt. No. 320). Following completion of the briefing, the court conducted oral argument on July 9, 2015.

Arnold seeks a total of $482,589.00 in attorney fees, in addition to costs and expenses of $53,008.51. Pfizer does not contest that Arnold is the prevailing party and therefore is entitled to fees and costs, but does contest the reasonableness of the amount Arnold requests. For the reasons that follow, Arnold's motions are granted in part and denied in part.[1]

*Legal Standards*

As the prevailing party, Arnold is entitled to recover her fees, expenses and costs pursuant to the fee-shifting provisions of 42 U.S.C. § 12205 (prevailing party entitled to fees, litigation expenses, and costs under ADA). *Accord* OR. REV. STAT. § 659A.885(1)(prevailing party entitled to attorney fees and costs); FED.R.CIV.P. 54 (prevailing party entitled to costs and attorney fees if provided by statute, rule or order); LR 54-1 & 54-3 (same).

The Ninth Circuit has adopted the "lodestar" method for calculating attorney fees. *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)(ADA claim). That calculation multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). The court must then decide whether to enhance or reduce the lodestar figure by evaluating a number of factors. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Hensley*, 461 U.S. at 434. There is a strong presumption that the lodestar method

---

[1] The procedural background of this case is well-known to the parties, and was discussed at length in the court's Opinion and Order on Post-Trial Motions (Dkt. No. 303). Further discussion here is omitted for brevity.

produces a reasonable figure, and should only be enhanced or reduced in exceptional circumstances. *Del. Valley Citizens*, 478 U.S. at 565; *Fischer*, 214 F.3d at 1119 n.4.

*Discussion*

I.    *Reasonable Hourly Rate*

A reasonable hourly rate is determined by looking to the "prevailing market rates in the relevant community" as well as the skill, experience, and reputation of the lawyer. *Blum v. Stepson*, 465 U.S. 886, 895 (1984); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). The party requesting the fees has the burden of producing "satisfactory evidence," in addition to the affidavits of its counsel, that the requested rates are in step with those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005)(quoting *Blum*, 465 U.S. at 895 n.11). The best evidence of the prevailing rate in Oregon is the periodic Economic Survey conducted by the Oregon State Bar. LR 54-3; *Roberts v. Interstate Distrib. Co.*, 242 F.Supp.2d 850, 857 (D. Or. 2002); *Wolfe v. City of Portland*, Case No. 3:12-cv-02035-PK, 2013 WL 6002391, at *10 (D. Or. Nov. 8, 2013).

Plaintiff seeks fees for the work of four attorneys in this case, Daniel J. Snyder, Erin McCool, Cynthia Gaddis, and Carl Post.[2] Plaintiff also seeks attorney fees for work performed in response to Pfizer's post-trial motions by the law firm of Hart Wagner, LLC.

---

[2] Arnold's attorneys have separated their time largely into the categories of "tasks" and "emails." Arnold requests compensation for 609.7 task hours and 285.3 email hours of Snyder's time at an hourly rate of $400. Arnold seeks compensation for 144.7 task and phone hours and 10.1 email hours for McCool's time at a variable rate of $275-295. Arnold seeks compensation for 53.9 task hours and 22.8 email hours for Post's time at a variable hourly rate of $275-$295. Arnold requests 107.1 task and phone hours and 63.1 email hours for Gaddis's time at a variable hourly rate of $185-225. Arnold also seeks compensation for 37.8 hours of work performed by attorneys at Hart Wagner, LLC which totaled $9,885.

### A.    Daniel Snyder

Arnold's counsel, Daniel J. Snyder ("Snyder"), seeks $400 per hour for time spent on Arnold's claims.   Snyder has been a practicing law in Portland, Oregon attorney for approximately 37 years, predominantly specializing in civil rights and employment litigation.   The Oregon State Bar 2012 Economic Survey ("OSB 2012 Survey") provides hourly billing rate information by area of practice.  For Portland, Oregon private practice attorneys who perform Civil Litigation, Plaintiff (excluding personal injury), the OSB 2012 Survey shows the average billing rate is $266 per hour, attorneys in the 75th percentile bill at $300 per hour, and attorneys in the 95th percentile bill at $400 per hour.  The OSB 2012 Survey also shows the average hourly rate billed by attorneys in private practice generally with over 30 years of practice is $340 per hour and the median slightly higher at $350 per hour, with attorneys in the 75th percentile billing at $400 per hour, and 95th percentile billing at $500 per hour.  Snyder acknowledges that he has been awarded fees at a rate of $350 per hour in other cases in this district. *See, e.g., Wolfe*, 2013 WL 6002391, at *10; *Lenon v. Starbucks Corporation*, Case. No. 3:11-cv-01085-BR, 2012 WL 1377042, at *3 (D. Or. Apr. 19, 2012).  Snyder submits that he has increased his hourly rate to account for inflation and to more accurately reflect his "skills and experience." Dec. of Daniel Snyder in Supp. of Attorney Fees ("Snyder Dec.") (Dkt. No. 325) ¶ 14.  The court concludes that given Snyder's total years of practice and his experience and skill, compensation at $400 per hour is a reasonable hourly rate.

### B.    Erin McCool

Arnold requests a variable rate of $275-295 per hour for McCool.  McCool is a graduate of the Marshall–Wythe School of Law at the College of William and Mary in Williamsburg, Virginia, and has been an active member of the Oregon Bar since 2006.  McCool has been admitted to practice

in the United States District Court and the United States Court of Appeals since 2009. McCool served as a law clerk to the Honorable Rex Armstrong on the Oregon Court of Appeals for two years following her graduation from law school. McCool joined the Law Offices of Daniel Snyder as an associate attorney in 2009 and has since practiced civil litigation in Portland and has focused on employment law matters. McCool has also been active in the Portland legal community volunteering her time to a nonprofit and to a student mock-trial competition.

McCool worked on Arnold's case from 2011 to 2012, when she had five to six years of experience, and again in 2015 when she had eight years of experience and assisted with preparing the present attorney fee petition. Arnold requests an hourly rate of $275 for McCool's work performed in 2011-2012, and $295 for McCool's work performed in 2015. The OSB 2012 Survey provides that Portland attorneys with four to six years of experience, the average billing rate is $210 per hour, the 75th percentile is $250 per hour, and the 95th percentile is $295 per hour. Additionally, the OSB 2012 Survey demonstrates that for attorneys with seven to nine years of experience, the hourly billing rate is $295 for the 75th percentile, and $375 for the 95th percentile. Given McCool's background and experience, the court finds that a rate of $250 in 2011-2012, and $295 in 2015, or the equivalent of the 75th percentile, is reasonable and appropriate.

C.    *Cynthia Gaddis*

Arnold requests a variable billing rate of $185-$225 per hour for work performed by Gaddis. Gaddis was admitted to practice in 2011, and began working for Snyder's law firm as an associate in 2012. Gaddis worked on Arnold's case in 2013-2015, when she had zero to three years of experience. Gaddis has been awarded fees at an hourly rate of $175-177 for work performed in 2012 and 2013 in other cases in this District. *See, e.g., Wolfe,* 2013 WL 6002391, at *11. The OSB 2012

5 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

Survey reveals that for Portland-area attorneys with zero to three years of experience, the average hourly billing rate is $182, the 75th percentile is $198, and the 95th percentile is $246. The court concludes that based on Gaddis's experience and skills, the following rates are reasonable: $185 per hour for 2013, and $200 per hour for 2014 and 2015. The court finds these rates roughly equivalent to the average hourly rate for attorneys with similar years of practice, increasing slightly to reflect Gaddis's increased experience, and the rate is roughly equivalent to the 75th percentile for attorneys with three years' experience.

      D.    *Carl Post*

Arnold requests a variable billing rate of $275-295 for work performed by Post. Post is a graduate of the University of Oregon School of Law and has been an active member of the Oregon Bar since 2006. Post operated his own law firm in Medford, Oregon, from 2006 to 2009 during which time he handled employment, family, construction, and personal-injury matters. Post joined the Law Offices of Daniel Snyder in 2009 and has since practiced civil litigation in Portland with a focus on employment-law matters. Post has been recognized by Super Lawyers as a Rising Star in 2013, 2014, and 2015.

When Post performed work on Arnold's case from 2010 through 2013, Post had four to six years of experience, and in 2014 and 2015 had seven to nine years of experience. Again, the OSB 2012 Survey provides that Portland-area attorneys with four to six years of experience, the average billing rate is $210 per hour, the 75th percentile is $250 per hour, and the 95th percentile is $295 per hour. Additionally, the Survey demonstrates that for attorneys with seven to nine years of experience, the hourly billing rate is $295 for the 75th percentile and $375 for the 95th percentile.

6 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

Given Post's experience, the court concludes that compensation at an hourly rate of $250 and $295 for work performed on this case is reasonable under the circumstances.

### E.    Hart Wagner Attorneys

Plaintiff seeks a total of $9,885 for 37.8 hours of work performed by Janet Schroer and associates at Hart Wagner LLP.  Snyder attested at oral argument that he associated with Schroer after extensive post-trial motions were filed, that Schroer has experience in handling appellate matters, and that Snyder anticipated that Pfizer would file an appeal.  The court finds that given the complexity of the post-trial motions and likelihood of an appeal, associating counsel with appellate experience was prudent.  Although Schroer did not file a declaration setting forth her qualifications and hourly rate, Arnold did submit an invoice with the tasks performed and hourly rates charged.  Snyder Dec. Ex. 3.  The court is familiar with Schroer's skills and experience, and finds the tasks are adequately described, and the rates are reasonable.  Having carefully reviewed the billing entries and the rates charged by Hart Wagner, the court finds them reasonable under the circumstances, and fees are so awarded.

## II.    Hours Reasonably Expended

The court is responsible for determining the reasonableness of a fee petition. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).  The party seeking the fee award bears the burden of demonstrating the number of hours spent was reasonably necessary to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434; *Gonzalez*, 729 F.3d at 1202.  This burden can be satisfied by submitting documentary evidence supporting the hours worked and fees claimed. *Hensley*, 461 U.S. at 433.  Fee petitions that include inadequate detail or that fail to separate time

for individual tasks may be totally or partially denied, or apportioned accordingly. *See Fischer*, 214 F.3d at 1121 (noting district court has authority to deny fee requests that are "poorly documented"). Reasonable time spent in preparing a fee petition generally is recoverable. *Guerrero v. Cummings*, 70 F.3d 1111, 1112 (9th Cir. 1995). Ultimately, a reasonable number of hours is the number of hours that "'reasonably could have been billed to a private client.'" *Gonzalez*, 729 F.3d at 1202 (quoting *Moreno*, 534 F.3d at 1111).

A.    *Partial Success*

A prevailing plaintiff seeking attorney fees may be compensated only for hours expended in furtherance of successful claims or claims closely related to successful claims. *Hensley*, 461 U.S. at 434–35. "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Id.* at 440. To determine fees in a case of partial success, the court must consider: (1) whether the plaintiff failed to prevail on claims that were unrelated to the claims on which she succeeded; and (2) whether the plaintiff achieved "'a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002)(quoting *Hensley*, 461 U.S. at 434).

The first step requires the court to examine whether the successful and unsuccessful claims are *unrelated*. *Dang*, 422 F.3d at 813 (emphasis added). "Claims are *unrelated* if the successful and unsuccessful claims are distinctly different *both* legally and factually; claims are related, however, if they involve a common core of facts or are based on related legal theories." *Id.* (emphasis in original, internal quotations and citations omitted). The court should focus on whether the unsuccessful and successful claims arose out of the same course of conduct. *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003). If the claims are related, the court engages in the second step of

8 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

the analysis, and must assess the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Dang*, 422 F.3d at 813.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. When "a plaintiff has achieved only partial or limited success, [however,] the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. Nonetheless, a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee. *Id.* at 435 n.11; *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).

Pfizer contends that Arnold's overall attorney fee award should be reduced due to the limited nature of her success. At summary judgment, the court dismissed Arnold's claims for retaliation under the Oregon Rehabilitation Act, workers compensation discrimination and wrongful discharge (Dkt. No. 133). At the close of plaintiff's case at trial, the court dismissed Arnold's claims under the Family Medical Leave Act, as well as her claim for punitive damages (Dkt. No. 261). Pfizer also contends a downward adjustment of Arnold's attorney fees is justified because the jury reduced Arnold's economic damages award based on evidence that Arnold used sedating medication while employed with Pfizer contrary to company policy. According to Pfizer, Arnold's partial success warrants a reduction of attorneys fees by 63 percent, resulting in an award of $178,557.93.

Arnold responds that the claims against Pfizer were so closely related to the claims on which she prevailed that the fees cannot be segregated and that she is entitled to the full fee award. The court agrees.

In this case, Arnold's claims involved a common set of core facts – her employment with and termination from Pfizer. To be sure, proving that Arnold suffered disability discrimination and

9 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

retaliation resulting from her on-the-job back injury and attention deficit disorder (ADD) required Arnold to present evidence of her work environment, interactions with supervisors, as well as interactions with Pfizer's medical and human resources staff. Moreover, Arnold's successful and unsuccessful claims involved numerous overlapping facts, such as her medical condition, her use of workers compensation, her use of leave time, her recovery from her injury, and discriminatory treatment by Pfizer when she returned to work. Indeed, the facts supporting Arnold's successful disability discrimination claims involve the same common core of facts that would have been necessary to demonstrate her ultimately unsuccessful claims of wrongful discharge, FMLA discrimination, and workers compensation discrimination. Therefore, the court concludes her claims are related. *Odima v. Westin Tuscon Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995)(finding state tort claims were related to plaintiff's successful Title VII and § 1981 claims and thus compensable).

At oral argument, Pfizer suggested that plaintiff's fees could be segregated based her successful ADD disability theory and unsuccessful other theories. According to Pfizer, the evidence at trial showed that Arnold was performing well at Pfizer until she was confronted with accusations of discrepancies on her Starter Activity Forms on May 27, 2009, after which Arnold obtained an ADD diagnosis. The court is wholly unconvinced. As the court detailed in its Opinion and Order on Post-Trial Motions, Arnold presented substantial evidence at trial on two disability theories, ADD and her back injury. *See* Opinion & Order (Dkt. No. 303) at 41-43. For example, Arnold presented evidence that her supervisor Darcy Small became aware of her back injury shortly after becoming her supervisor in early 2009. Arnold also presented evidence that a short time later, Small learned Arnold would need additional time off for surgery. *Id.* This evidence was not only relevant to Arnold's successful theories of disability discrimination, but also relevant her unsuccessful FMLA

claim. Thus, Pfizer's proposition that Arnold's fees could be segregated based on how the evidence was presented at trial is simply unworkable and therefore is rejected.

Additionally, the court concludes that Arnold's successful disability discrimination claims are significant to her overall success. Other matters, such as discovery, summary judgment, and trial, would not likely have been dramatically shortened even if the case were limited to plaintiff's ADA and Oregon Rehabilitation Act claims. Testimony and evidence that may have related to her unsuccessful claims was introduced by way of background, or to help the jury place matters in perspective, or to show the history or sequence of events. Thus, the efforts expended on pursuing plaintiff's unsuccessful claims FMLA, workers compensation discrimination, or wrongful discharge theories certainly may have contributed to her overall success on her disability discrimination claims. Arnold achieved excellent results, and is entitled to a fully compensatory award. *See Hensley*, 461 U.S. at 435-36.

B.    *Block-Billed Entries*

"Block-billing" typically refers to "'any single time entry of three or more hours containing four or more tasks, or containing only two tasks where one of the tasks could have taken from a small to a substantial period of time.'" *Lemus v. Timberland Apartments, LLC*, 876 F. Supp. 2d 1169, 1180 (D. Or. 2012)(quoting *Orme v. Burlington Coat Factory of Or., LLC*, No. 07-cv-859-MO, 2010 WL 1838740, *6 n.3 (D. Or. May 3, 2010)); *see also Welch v. Metropolitan Life Ins.*, 480 F.3d 942, 945 n.2 (defining "block-billing" as a practice by which a timekeeper enters a total daily time instead of itemizing the time expended on each task). This practice is in direct contravention of the court's instruction that "members of the bar record time on particular, individual tasks and support their fee petitions with a level of documentation that allows the Court, and opposing counsel,

11 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

to adequately review the reasonableness of the time spent on a single task." Message From The Court Regarding Fee Petitions, (last updated Feb. 6, 2013) *available at* http://ord.uscourts.gov/index.php/court-info/court-policies/fee-petitions. Where a substantial amount of time is billed for a variety of tasks, the court cannot examine the reasonableness of each task.

Pfizer challenges six entries by Snyder totaling 32.2 hours and one entry by McCool for 4.1 hours, contending that time has been block-billed and purports that the time for these entries be reduced by 50 percent because it is impossible to discern how much time was spent on each task. The challenged entries are as follows:

| 5/1/11 | Snyder | 3.4 | Continue to prepare for depositions of Defendant's witnesses this week. Go through and copy deposition exhibits. |
| 5/4/11 | Snyder | 6.6 | Leave for deposition of Lonnie Lucherini and take deposition |
| 2/2/12 | Snyder | 3.1 | Work on letter to Dr. Freeman |
| 5/14/13 | Snyder | 3.6 | Prepare for Summary Judgment. Read materials. |
| 3/4/14 | Snyder | 4.6 | Trial prep. Meeting with client. Prepare trial testimony and go through documents for exhibits. |
| 6/12/14 | Snyder | 10.9 | Work on rebuttal and closing argument. Trial. |
| 2/26/12 | McCool | 4.1 | Research and draft section regarding comparator evidence for MSJ response |

In a Supplemental Response, Snyder responds that he has not engaged in block-billing, and provides additional detail for each of these entries. Supp. Dec. (Dkt. No. 335) at 2-3. Snyder

concedes, however, that he photocopied exhibits on May 1, 2011, and estimates that it took approximately 20 minutes to do so.

Having carefully reviewed Snyder's entries on the days in question, the court concludes that Snyder and McCool have adequately described the tasks detailed above.   Most of the entries describe a single task, such as  preparing for summary judgment, taking a deposition, and drafting a letter.  To be sure, taking a deposition readily could encompass the better part of a day, as Snyder attests.  Likewise, billing 10.9 hours for a day of trial in this case is not unreasonable, and is consistent with Snyder's other trial days, which are unchallenged by Pfizer.  Snyder Dec. (Dkt. No. 325) Ex. 1, at 15-16 (entries dated 6/3/2014 (9.4 hours); 6/4/2014 (9.2 hours); 6/5/2014 (9.7 hours); 6/9/2014 (9.2 hours); 6/10/2014 (9.5 hours); 6/11/2014 (10.1 hours).  Moreover, the remaining entries (May 1, 2011; February 2, 2012; May 14, 2013 and March 4, 2014) describe only a portion of the work performed by Snyder on those days and appear reasonable to the tasks therein described. Furthermore, McCool's 4.1 hours for drafting a section of the summary judgment response is sufficiently described and is reasonable for the task.  Thus, the entries above will be included in the award, with a slight reduction of 0.4 for Snyder's admitted clerical time on May 1, 2011.

C.    *Clerical Tasks*

It is well-settled that the court may reduce an attorney's hours for time spent performing clerical work.  *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated on other grounds*, 984 F.2d 345 (1993); *see Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (noting the dollar value of non-legal work "is not enhanced" because it is performed by a lawyer); *Sterling Savings Bank v. Sequoia Crossing, LLC*, Civ. No. 09-555-AC, 2010 WL 3210855, at *7 (D. Or. Aug. 11, 2010)("Tasks considered clerical include, but are not limited to, filing motions with the

13 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents.") Costs associated with clerical tasks are generally considered overhead expenses reflected in an attorney's billing rate. *Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-cv-00239-HZ, 2014 WL 837389, *8 (D. Or. Mar. 3, 2014); *see also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)(reducing fees for clerical tasks such as filing and organization).

Although not specifically challenged by Pfizer, in reviewing Snyder's tasks, the court has identified several additional clerical tasks that are not properly reimbursable. Consistent with the practice in this District, the court will exclude entries for photocopying, organizing, deposition scheduling, and deposition billing. *See Wolfe*, 2013 WL 6002391 at *7 (eliminating clerical tasks from attorney fee award). The court finds the following entries clerical and must be excluded from the award:

| | | | |
|---|---|---|---|
| 5/31/11 | Snyder | 0.1 | Call to Esquire court reporting Liza Zachary regarding deposition fees. |
| 6/9/11 | Snyder | 0.1 | Write letter to Esquire court reporting |
| 6/28/11 | Snyder | 0.8 | Prepare letter to Esquire Solutions re: contract and on deposition |
| 7/20/11 | Snyder | 0.1 | Call to Esquire solutions, accounts receivable |
| 8/10/11 | Snyder | 0.2 | Look for court reporter David Hart . . . message left for David A. Hart; prepare letter to David Hart. |
| 8/10/11 | Snyder | 0.5 | Call Esquire Solutions and write additional letter to Esquire Solutions. Accounts receivable. |

| 8/10/11 | Snyder | 0.1 | Call from David Hart. He does not know if there is a contract with Pfizer. he will tell the manager that there is a dispute with the bill. |
| 8/10/11 | Snyder | 0.3 | Return call to Gloria Perry at Esquire Solutions in Seattle regarding bills and potential contract with Pfizer. |
| 10/2/11 | Snyder | 0.1 | Return call to Heidi Guettler – message regarding Defendant's time needed for Mr. Arnold's deposition |
| 10/6/11 | Snyder | 0.1 | Voice mail from Heidi Guettler re: deposition of Mr. Arnold. |
| 11/30/11 | Snyder | 0.1 | Voice mail from Esquire Solutions regarding contract with Pfizer. |
| 12/30/13 | Snyder | 0.1 | Call to Esquire re: Chiu deposition. Left message do not want minis, copy of video or exhibits. |
| 12/30/13 | Snyder | 0.1 | Call to Regina Zavon, Esquire re: deposition |
| 4/26/13 | Snyder | 0.1 | Give instructions to legal assistant |

These reductions result in a 2.8 hour reduction of Snyder's time.

The court also finds the following entries contain some portion of non-compensable clerical tasks combined with other compensable tasks:

| 5/4/11 | Snyder | 2.0 | Prepare for deposition of Lonnie Lucherini; meeting with Erin McCool re: Darcy Small deposition.  Copy and organize exhibits for deposition. |
| 1/5/14 | Snyder | 0.5 | Revise Motion in Limine. Read Nooshin Rahimi deposition.  Copy Exhibits for deposition tomorrow. |

15 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

| 1/31/14 | Snyder | 0.5 | Go through and organize exhibits for settlement letter to mediator. Revise settlement letter. |

The court reduces each of the above entries by 0.4 hours to reflect the portion attributable to clerical work based on Snyder's estimate of 20 minutes to perform such work. This results in a modest reduction of 1.2 hours from Snyder's time.[3]

### D.    Multiple Attorneys – Duplication of Effort, Fees for Fees

In general, "[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys." *Nat'l Warranty Ins. Co. v. Greenfield*, No. CV–97–01654–ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001); *West Linn Corporate Park, LLC v. City of West Linn*, No. 3:01–cv–01787–HZ, 2011 WL 4708774, at *12 (D. Or. Oct. 4, 2011)(reducing fees for duplicative efforts among counsel such as conferencing with each other). Thus, the court has reviewed the time spent by Snyder, McCool, Post, and Gaddis to ensure that any duplication of effort is eliminated. A careful review of attorney task submissions reveal only a few instances where two attorneys billed for conferences. Thus, the following entries are eliminated:

| 5/9/11 | McCool | 0.7 | Conference of attorneys re: Darcy Small deposition |
| 7/29/14 | Gaddis | 0.8 | meet with Janet Schroer about responding to post-trial motions |
| 8/8/14 | Gaddis | 0.4 | meet with client to discuss evidence for response to JMOL |

---

[3] The court has reviewed the submissions of McCool, Post, Gaddis, and Hart Wagner LLC, and has not discovered any non-reimbursable clerical tasks therein.

These entries total a modest 0.7 hour reduction from McCool's time in 2011, and 1.2 hour reduction from Gaddis's time in 2014 for duplicated effort.

In general, a prevailing party may recover time spent pursuing a motion for attorney's fees and costs. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 905 (awarding fees for fees); *accord Columbia Riverkeeper v. U.S. Army Corps of Engineers*, No. 3:13-cv-01494-PK, 2015 WL 2095223, at *5 (D. Or. May 5, 2015)(awarding "fees-on-fees" to prevailing party in FOIA action). The hours requested for preparing a fee petition must be reasonably expended. *Columbia Riverkeeper*, 2015 WL 2095223, at *5.

A review of Arnold's attorneys' submissions indicates that they collectively spent 43 hours preparing the materials in support of the attorneys fees, costs and expenses. The court acknowledges that it takes some time to prepare a fee petition and the supporting materials. Although Pfizer does not object to any of the time request for preparing the fee petition, the court has reviewed the time entries and finds some duplication of effort. For example, on several occasions, Post and Gaddis prepared, revised and finalized declarations of other attorneys supporting fee requests in addition to the time sought by the authoring attorney. Therefore, the following entries are eliminated as duplicative:

| | | | |
|---|---|---|---|
| 1/28/15 | Gaddis | 0.7 | draft declarations for Gaddis, Snyder, Post and McCool supporting attorney fee motion |
| 1/29/15 | Gaddis | 0.5 | review and edit Erin's time entries |
| 3/30/15 | Post | 1.0 | revise attorney fee statement for Cindy Gaddis |
| 3/26/15 | Post | 2.5 | prepare attorney fee petition - prepare Erin McCool's declaration and exhibits |

17 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

| 3/26/15 | Post | 1.7 | prepare attorney fee petition - prepare Dan Snyder's declaration and exhibits |
| 3/30/15 | Post | 1.0 | revise attorney fee statement for Cindy Gaddis |
| 3/30/15 | Post | 0.9 | prepare attorney fee statement for Dan Snyder |
| 3/31/15 | Post | 0.8 | finalize Gaddis declaration for attorney fees |
| 3/31/15 | Post | 0.8 | revise Dan's attorney time |
| 3/31/15 | Post | 1.4 | revise Snyder declaration for attorney fees |
| 3/31/15 | Post | 0.5 | revise attorney fee statement for Cindy Gaddis |
| 3/31/15 | Post | 1.1 | prepare attorney fee statement for Dan Snyder |
| 4/1/15 | Post | 0.8 | finalize Gaddis declaration for attorney fees based on changes from Cindy |
| 4/1/15 | Post | 1.5 | finalize Snyder declaration for attorney fees |

These reductions result in a 1.2 hour reduction from Gaddis's time in 2015, and a 14.0 hour reduction in Post's time from 2015.

### E.    *Insufficiently Described Entries–Attorney Emails*

Pfizer argues that all of the billing entries for emails contain inadequate detail to permit a meaningful review. Pfizer contends that numerous emails fail to describe the specific purpose of the email or whether the length of time is reasonable to the task. Pfizer proposes an across-the-board reduction of 20 percent of *all attorney time*, or $96,517.80, to account for the insufficiently described entries. Pfizer's concern is well-taken.

Arnold's counsel has billed separately for each email received or sent on this matter at a standard rate of 0.1 hours. The total hours for emails in this case is 381.3 broken down as follows: Snyder, 285.3 hours; Post, 22.8 hours; McCool, 10.1 hours; and Gaddis, 63.1 hours. At first glance,

this accounting of time for emails appears detailed.  However, upon closer review, the practice of

billing 0.1 hour for each and every email masks excess and redundancies.  *See Carr v. Tadin, Inc.*,

51 F. Supp. 3d 970, 982-83 (S.D. Cal. 2014)(finding that billing in standard 0.1 hour increments for

emails, including intra-office emails and ECF notices resulted in overstaffing and inflationary

billing; applying across-the-board reduction of 13 percent of all attorney time).  To be sure,

numerous emails concern intra-office communications, some relate to billing, and there numerous

emails showing "out-of-office" replies for which Snyder seeks payment.  *See, e.g.,* Snyder Dec. Ex.

1, Entries dated 9/21/2011, 10/18/2011).  While a client may agree to pay her attorney 0.1 hours for

each email associated with the case, it is not appropriate to shift this burden to one's adversary.  *See*

*Ash Grove Cement*, 2014 WL 837389, at *7 ("'A party is certainly free to hire and pay as many

lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent.'"

(quoting *Nat'l Warranty Ins.*,  2001 WL 34045734, at *5)).

For example, there are multiple entries – all on the same day – regarding a seemingly

mundane task, such as receiving notification from the Court's automated Electronic Case Filing

("ECF") system.  *See, e.g.,* Snyder Dec., Ex. 1, at 34, 44, 72 (four ECF notices on 1/31/2012

regarding Motion for Summary Judgment; eight ECF notices on 5/30/12 regarding response to a

motion, 13 ECF notices on 5/5/2014 regarding motion in *limine* and exhibit list).  While the time

spent reviewing the underlying documents is clearly compensable, it is difficult for the court to

award such excessive time to glance at the ECF notices.  *See Barile v. Allied Interstate, Inc.*, No. 12

Civ. 916(LAP)(DF), 2013 WL 795649, at *7 (S.D.N.Y. Jan. 30, 2013), *adopted*, 2013 WL 829189

(Mar. 4, 2013)(finding that billing in separate 0.1 increments for each email exaggerated hours spent,

including receiving ECF notices).

19 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

And, there are numerous entries on the same date where there is no information indicating that the time spent is reasonable for the task at hand. For example, Snyder seeks 0.1 hours for each of 14 entries on December 30, 2011 for "Arnold v. Pfizer: Proposed Joint Status Conference Report," 20 entries that same day for "Arnold v. Pfizer: Proposed Joint ADR Report 12.30.11," and yet another six entries for "Arnold v. Pfizer, Joint ADR Report." Snyder Dec. Ex. 1, at 31-32. Again, this billing practice quickly inflated what appears to be three separate email chains into four hours for which Snyder seeks $1,600. *See Carr,* 51 F. Supp. 3d at 982-83 (collecting cases disapproving of similar billing practices); *accord Lenon*, 2012 WL 1377042, at *5 (finding that inadequately described billing entries emails, telephone conversations, and client meetings warranted reduction).

Additionally, Snyder seeks fees for 22 email entries (at 0.1 hour increments each) on January 2, 2014, pertaining to scheduling Dr. Stark's expert witness deposition. However, there is nothing in the subject line indicating that Snyder's involvement was required, or if that task may have more appropriately been handled by an assistant, paralegal or more junior attorney. Thus, based on the information presented to the court, spending 2.2 hours to schedule an expert witness deposition appears excessive. *See* Snyder Dec., Ex. 1, at 56; *see Sterling Savings Bank*, 2010 WL 3210855 at *5-6 (noting that inadequately explained tasks may be disallowed).

Accordingly, the court concludes the Arnold's counsels' email entries provide insufficient detail to be fully compensable. The court cannot discern whether *any* email sent by Arnold's counsel was lengthy or short; whether *any* response received by counsel was detailed and substantive, or simply contained a yes or no response. In light of the sheer volume of email entries – Snyder's emails alone span 68 single-spaced pages in approximately nine-point font – the court finds it

reasonable to apply an across-the-board reduction of 20 percent for counsel's emails to account for the excess and redundancies in the entries.

The court declines to apply the across-the-board reduction to *all* attorney time as advocated by Pfizer. The submissions by Arnold's attorneys are separated into the categories of "tasks" and "emails." The court has carefully reviewed all of the submissions, and but for the minor reductions detailed above, the attorneys' "tasks" contain sufficient detail. The insufficiencies and redundancies of concern are limited to counsels' emails and the questionable email billing practice. Therefore, the court finds it appropriate to apply the 20 percent reduction to emails only.

In summary, based on the above analysis, the court excludes 4.4 hours of Snyder's tasks and 57 hours from Snyder's emails (285.3 x 20% = 57), 0.7 hours from McCool's tasks and 2.0 hours from McCool's emails (10.1 x 20% = 2.0), 14 hours from Post's tasks (2015) and 4.6 hours from Post's emails (22.8 x 20% = 4.6), and 2.4 hours from Gaddis's tasks and 12.6 hours from Gaddis's emails (63.1 x 20% = 12.6) on the basis that such hours were inadequately described, contained clerical work, or were unnecessarily duplicative or excessive. Arnold is entitled to compensation for the remaining hours requested: 833.6 hours of Snyder's time (895 - 61.4 = 833.6), 152.1 hours of McCool's time (154.8 - 2.7 = 152.1), 58.1 hours of Post's time (76.7 - 18.6 = 58.1), and 155.2 hours of Gaddis's time (170.2 - 15 = 155.2). Arnold also is entitled to compensation for the work performed by the attorneys at Hart Wagner LLP.

III.    *Calculation of the Lodestar and Adjustment*

Based on the foregoing, the court calculates the lodestar figure of attorneys fees in the amount of $428,469 calculated as follows: Snyder's reasonable hourly rate of $400 multiplied by 833.6 hours (605.3 task plus 223.9 email hours) reasonably expended equals $333,440; McCool's

reasonable hourly rate of $250 multiplied by 147.7 hours reasonably expended in 2011-2012, plus

McCool's reasonable hourly rate of $295 multiplied by 4.4 hours reasonably expended in 2015,[4]

equals $38,223 ($36,925 + $1,298 = $38,223); Post's reasonable hourly rate of $250 multiplied by

19.3 hours reasonably expended in 2010-2013 (8.1 task plus 11.2 email hours) plus Post's reasonable

hourly rate of $295 multiplied by 38.8 hours reasonably expended in 2014-2015 (31.8 task plus 7.0

email hours), equals $16,271 ($4,825 + $11,446 = $16,271); Gaddis's reasonable hourly rate of $185

multiplied by 26 hours reasonably expended in 2011-2013 (16 task, 2.3 phone, plus 7.7 email hours),

plus Gaddis's reasonable hourly rate of $200 multiplied by 129.2 hours expended in 2014-2015 (82.1

task, 4.3 phone, plus 42.8 email hours) equals $30,650  ($4,810 + $25,840 = $30,650); and Hart

Wagner fees of $9,885.

 After the court calculates the lodestar, it is within the court's discretion to adjust the lodestar

figure either upward or downward based upon a number of factors. *See Kerr v. Screen Extras Guild,*

*Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975).  The *Kerr* factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.  Only those factors which are applicable need to be addressed. *Fischer*, 214

F.3d at 1119.

---

 [4] McCool requests only 4.4 task hours in 2015; the remainder of her work, including tasks, emails, and phone calls is from 2010-2013.

The court may exercise its discretion to adjust the lodestar figure either: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, or (2) upward in "rare" and "exceptional" cases. *Hensley*, 461 U.S. at 435–36; *Del. Valley Citizens*, 478 U.S. at 565. There is a strong presumption that the lodestar figure is a reasonable fee. *Del. Valley Citizens*, 478 U.S. at 565; *Wolfe*, 2013 WL 6002391, at *12.

The court rejects Pfizer's contention that the lodestar amount should be adjusted downward to reflect the jury's decision to reduce Arnold's award because she continued to take prescription pain medication against company policy. The court concludes that the jury's reduction reflects a sufficient and reasonable amount and that any further adjustment in the form of a reduced attorney fee award is unwarranted, given the court's view of the facts and evidence presented at trial. Therefore, after considering the *Kerr* factors, the court concludes that the lodestar figure is the appropriate award in this case, and Arnold is awarded $428,469 in attorney fees.

## IV.    Costs

Costs generally are awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. FED. R. CIV. P. 54(d). The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579–80 (9th Cir. 2010). In an action under the ADA, the prevailing party is entitled to recover "a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205; *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). Under the ADA, litigation expenses include travel expenses. *Lovell*, 303 F.3d at 1058 (noting that ADA implementing regulation, 28 C.F.R. § 35.175, defines litigation expenses to include travel expenses and expert witness fees).

Arnold seeks a total of $53,008.51 in costs and expenses. As detailed in Arnold's Bill of Costs, Arnold seeks costs of $28,157.33 for filing fees, service of summons, transcripts, and witness fees. (Dkt. No. 320). Arnold seeks $24,467.69 in litigation expenses for out-of-pocket expenses such as obtaining medical records, travel, and other expenses, and $383.49 in litigation expenses from Hart Wagner for legal research and photocopying. Memo. in Supp. (Dkt. No. 323) at 9-10; Snyder Dec. (Dkt. No. 325) Ex. 3, at 3-4.

Pfizer objects only to Arnold's travel expenses of $1,123.81, including charges for airfare, hotel, and taxis. Pfizer argues that the travel expenses appear duplicative of Snyder's time to take Lucherini's deposition. Additionally, Pfizer contends that McCool's travel expenses should not be reimbursed because Arnold also seeks 7.7 hours of McCool's time in fees for traveling to and from Phoenix to take Darcy Small's deposition and McCool did not adequately describe that her travel time was productive, relying on an out-of-district case. The court disagrees.

In her reply, Arnold explains that all of the travel expenses objected to relate to Small's deposition taken in Phoenix, Arizona. Plaintiff's Reply (Dkt. No. 334) at 12. Arnold provides that Small was not made available to be deposed in Portland, Oregon, thus requiring travel to Phoenix. *Id.* Arnold also describes that McCool took Small's deposition, and Snyder took Lucherini's deposition, therefore, there was no duplication of effort. *Id.* Moreover, as Arnold submitted, Small's deposition was rescheduled from the afternoon to the morning of May 9, 2011, requiring a change in McCool's travel arrangements, and attendant additional airfare charges.

With this explanation, the court finds the travel expenses reasonable and necessary in this instance. As Arnold's supervisor, Small was a key witness in the case, and taking her deposition was necessary. The court notes that sending McCool, with a substantially lower hourly billing rate, to

take Small's deposition demonstrated good billing judgment. Having reviewed the billing expenses, they are well within the range anticipated for overnight travel. Therefore, the travel expenses are recoverable and are so awarded.

With respect to seeking fees for McCool's travel time in addition to seeking travel expenses, the court finds such fees to be reasonable. *Grove*, 606 F.3d at 580 (finding reasonable attorneys fees includes litigation expenses where the prevailing local practice bills such costs to clients separately from the hourly rate). Billing for travel time, in addition to travel expenses, is customary for fee-paying clients within the District of Oregon. *Nat'l Warranty Ins.*, 2001 WL 34045734, at *6; *Atlantic Recording Corp. v. Anderson*, No. CV 05-933-AC, 2008 WL 2536834, at *12 (D. Or. June 24, 2008)(noting that it is customary for Portland attorneys to bill clients for reasonably incurred travel time); *Davis*, 976 F.2d at 1543 (finding travel time to meetings compensable because local attorneys customarily billed clients for such meetings). McCool has submitted a declaration attesting that her time spent was reasonable and necessary for the prosecution of this case, and the court finds no reason to conclude otherwise. Accordingly, the court finds McCool's the travel time reasonable and is properly included in the award of fees in addition to her reasonable travel expenses.

The court has reviewed Arnold's requested expenses and costs and finds them reasonable and necessary for Arnold's successful prosecution of this case. In summary, Arnold is awarded costs in the amount of $28,157.33, of as set forth in the Bill of Costs, and litigation expenses and costs in the amount of $24,851.18 as requested in her motion for Attorney Fees and Costs.

## Conclusion

Plaintiff's Motion for Attorney Fees and Costs (Dkt. No. 321) is GRANTED IN PART and DENIED IN PART. Plaintiff is awarded attorney fees in the amount of $428,469, and expenses and

25 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS

costs of $24,851.18.  Plaintiff's Bill of Costs (Dkt. No. 320) is GRANTED.  Plaintiff is awarded costs in the amount of $28,157.33.

IT IS SO ORDERED.

DATED this 29th day of July, 2015.

John V. Acosta
United States Magistrate Judge

26 - OPINION AND ORDER ON ATTORNEY FEES AND COSTS